William Bryant WARREN *v.* STATE of Arkansas

CR 92-1053                                    862 S.W.2d 222

Supreme Court of Arkansas
Opinion delivered September 20, 1993

*Gibbons Law Firm, P.A.*, by: *David L. Gibbons*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, William Bryant Warren, appeals a judgment of the Pope County Circuit Court convicting him of capital murder. Appellant was tried by a jury, found guilty, and sentenced to life in prison without parole. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2).

On appeal, appellant raises four points for reversal. We find no error in any of these points and affirm the trial court's judgment of conviction.

## I. Directed Verdict

Appellant's first point on appeal is that the trial court erred in denying his motion for a directed verdict because the penetration of the victim's vagina and rectum by a foreign instrument, which served as the basis for the underlying felony of rape, was also a contributing cause of the victim's death. Therefore, appellant argues the proof does not support the underlying felony of rape and his conviction for capital murder pursuant to Ark. Code Ann. § 5-10-101(a)(2) (Supp. 1991) must be reversed.

The Medical Examiner, Dr. Fahmy Malak, testified the victim died from a combination of injuries which included external injuries to the head, face, nose, lips, right breast, elbows, vagina and anus; trauma and fracture of the skull, with damage to the underlying brain; perforation, rupture and bruising of the vagina and perforation of the rectum which resulted in a connection between the vagina and the rectum and loss of about one pint of blood which was found in the pelvis. Additionally, there was evidence the victim was submerged in water. The Medical Examiner concluded the terminal event was drowning and the cause of death was multiple injuries. The Medical Examiner testified that all the wounds could have been caused by the same object, a circular object such as a shovel handle.

Appellant argues that since the penetrating wounds in the vagina and rectum of the victim were probably made by the same

weapon as the wounds to the head and abdomen of the victim, the penetration of the vagina and the rectum was for the purpose of committing murder and not for the purpose of committing rape. Appellant argues, since the penetration of the vagina and anus of the victim caused injuries which contributed to the death of the victim, the penetration is used to support the charge of murder and cannot also be used to support the charge of rape.

In support of his argument, appellant cites cases holding an assault and battery, which caused the death, cannot be used as an underlying felony to support a capital murder charge and burglary cannot be used as an underlying felony to support a capital murder charge when the proof showed the murderer entered the occupied dwelling solely in order to kill those within and not for a separate purpose which would support the burglary charge. *Sellers* v. *State*, 295 Ark. 489, 749 S.W.2d 669 (1988); *Parker* v. *State*, 292 Ark. 421, 731 S.W.2d 756 (1987), *cert. denied*, 111 S. Ct. 218 (1990). Unlike the cases appellant cites, penetration of the victim's vagina and rectum was not necessarily committed with the same objective as the other blows to the victims body. While the penetration of the victim's vagina and rectum with a blunt object caused internal injuries that contributed to the victim's death, the penetration of the victim's vagina and rectum was not necessary to cause the victim's death. An assault and battery is necessary to cause death; and burglary by entering into an occupiable structure is necessary in order to kill the person within. *Strawhacker* v. *State*, 304 Ark. 726, 804 S.W.2d 720 (1991). "Rape and first degree battery are separate and distinct crimes . . . with different elements of proof. And neither is a crime which can be subsumed under the other." *Strawhacker*, 304 Ark. at 731, 804 S.W.2d at 723. Rape by deviate sexual activity, which was the underlying felony in this case, requires the penetration "of the vagina or anus of one person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(B) (1987). Penetration of the vagina or anus of a person is not an act which is subsumed by the murder as the penetration is not necessary to cause the death.

## II. Sexual Gratification

Appellant argues the trial court erred in denying his motion for a directed verdict because there was insufficient proof to

support a finding that appellant committed the underlying felony of rape. Specifically, appellant argues the state failed to prove the penetration of the victim's vagina and anus was done for the purpose of "sexual gratification" as required by Ark. Code Ann. § 5-14-103(a)(1) (1987). The state contends appellant's argument was not preserved for appellate review because appellant did not specify the basis for his objection in the trial court. At the close of all the evidence, appellant moved for a directed verdict "based on the fact that there is no showing of a rape." Appellant stated in his motion that the basis was the state's failure to prove rape. This was sufficient to apprise the trial court appellant was arguing the state failed to prove the elements of rape. "Sexual gratification" is an element of rape. Therefore, appellant's argument was preserved for appeal.

Appellant argues the state failed to prove the penetration of the victim's vagina and anus was done for the purpose of "sexual gratification" as required under the statute. Ark. Code Ann. § 5-14-103(a)(1). Section 5-14-103(a)(1) provides in pertinent part:

> A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person:

> By forcible compulsion[.]

"Deviate sexual activity" is defined in pertinent part as:

> any act of sexual gratification involving:

> The penetration, however slight, of the vagina or anus of one person by any body member or foreign instrument manipulated by another person[.]

Ark. Code Ann. § 5-14-101(1)(B) (1987). "Sexual gratification" is not defined in the statute, but we have construed the words in accordance with their reasonable and commonly accepted meanings. *McGalliard* v. *State*, 306 Ark. 181, 813 S.W.2d 768 (1991).

We have held it is not necessary for the state to provide direct proof that an act is done for sexual gratification if it can be assumed that the desire for sexual gratification is a plausible reason for the act. *McGalliard* v. *State*, 306 Ark. 181, 813 S.W.2d 768; *see also Holbert* v. *State*, 308 Ark. 672, 826 S.W.2d 284 (1992). We have previously stated that "when

persons, other than physicians or other persons for legitimate medical reasons, insert something in another person's vagina or anus, it is not necessary that the state provide direct proof that the act was done for sexual gratification." *Williams* v. *State*, 298 Ark. 317, 321, 766 S.W.2d 931, 934 (1989). Appellant argues that our interpretation of "sexual gratification" in this manner does not reflect the will of the legislature, which has never defined sexual gratification nor changed the definition of deviate sexual activity despite many opportunities to do so. The legislature has also had several opportunities to define sexual gratification since the *Williams* case was decided and has not chosen to do so. Therefore, following *Williams*, *McGalliard* and *Holbert*, the state had sufficient proof to support the charge of rape and the trial court did not err in denying appellant's motion for a directed verdict.

### III. Hearsay Statement

Appellant argues the trial court erred by excluding hearsay testimony from the victim's father that the victim had told him she was dating a married man. Appellant contends the information solicited by his question falls under Ark. R. Evid. 804(b)(3) and should have been allowed. Ark. R. Evid. 804(b)(3) provides in pertinent part:

> Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability or to render invalid a claim by him against another or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true.

Appellant argues that even today for a woman to admit she is dating a married man to another is to subject her to disgrace and ridicule and that a reasonable woman would not say she was dating a married man unless it was true. Appellant argues he was prejudiced by the trial court's decision because he was unable to

argue that the married man might have murdered the victim when she told him she thought she was pregnant.

■■ We uphold the trial court's ruling if it was correct for any reason. *Chisum* v. *State*, 273 Ark. 1, 616 S.W.2d 728 (1981). The state argues that the trial court's ruling can be upheld because the question was beyond the scope of direct examination and was irrelevant. "The trial judge has considerable discretion in determining the scope of cross-examination" and we do not reverse absent an abuse of that discretion. *Bennett* v. *State*, 308 Ark. 393, 400, 825 S.W.2d 560, 564 (1992). Ark. R. Evid. 611 provides in pertinent part:

> (b) Scope of Cross-Examination. Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

The state only asked the victim's father about his race, the race of his family and his daughter, the victim, during direct examination. Therefore, the question was outside the scope of direct examination as the state contends. It was within the trial court's discretion to allow appellant's question, but it was not error for the trial court to refuse to allow the question. Additionally, if appellant had wished to ask the question of the witness, appellant could have called the witness on direct and asked the question. However, appellant chose not to call any witnesses in his defense.

## IV. Photographs

As his last point on appeal, appellant argues the trial court erred in admitting photographs of the victim's autopsy over his objection. Appellant objected to nine photographs which were admitted over his objection. These photographs are reproduced in the appendix along with the photographs which were admitted and to which he did not object. However, in his argument appellant only specifically refers to three photographs which were introduced over his objection. Therefore, we will only address those photographs for which appellant presents an argument on appeal. They are: State's Exhibit #56, State's Exhibit #58, and State's Exhibit #65.

■■ Appellant claims there were sufficient pictures of the autopsy to which he did not object to show the cause of the victim's death and it was error to admit the pictures to which he objected because the prejudicial effect of those photographs outweighed the probative value. "The question of prejudicial effect versus probative value is a matter addressed to the discretion of the trial judge, and on appeal" we do not reverse absent a manifest abuse of that discretion. *Bennett v. State*, 297 Ark. 115, 129, 759 S.W.2d 799, 807 (1988), *cert. denied*, 111 S. Ct. 144 (1990). The trial court admitted the photographs only after argument by counsel and review of the photographs during which the trial court determined that the photographs were not repetitious and were needed by Dr. Malak to explain his testimony. We have held that "even if photographs are inflammatory in the sense that they show human gore repulsive to the jurors, they are admissible within the discretion of the trial judge if they help the jury understand the testimony." *Richmond v. State*, 302 Ark. 498, 503, 791 S.W.2d 691, 694-95 (1990). In this case we cannot say that the trial court abused its discretion. *Richmond*, 302 Ark. 498, 791 S.W.2d 691.

As to State's Exhibit #56, appellant argues that it is simply a distant view of State's Exhibit #55 to which appellant also objected. Dr. Malak's testimony regarding State's Exhibit #56 was as follows:

> Exhibit 56 is a photograph of [the victim] as I received her. Exactly as she is I photographed the body. The photograph shows that she was wearing a short-sleeve pull-over shirt, multi-colored. The shirt was above the breast area and it shows the foam coming from the nose. It is like shaving cream, if you like, around the—mushroom-like around the nose. This indicates that she was breathing air when she was placed in water. It shows also the damage—some damage to the face and the right side of the—of the head. It also indicates—there is a number 3-1-6. This is the case number to indicate this is [the victim], the one I did the autopsy upon.

As to State's Exhibit #55, Dr. Malak testified as follows:

> Exhibit No. 55 is a front view of [the victim] showing her face and also the number to indicate that this is [the]

same body. The photograph shows a tear—t-e-a-r on the left eye about the angle of the eye, bruise of the eye, bruise of the nose, and the lips, as well as shows also damage to the right side of the head and also shows the pearl earring on the right side.

The foam around the victim's nose referred to in State's Exhibit #56 has been removed in State's Exhibit #55. Clearly State's Exhibit #56 was used by Dr. Malak and shows that the victim was breathing when she was placed in the water. Thus it was helpful to the doctor's testimony and was not repetitive of State's Exhibit #55. Appellant objected to the introduction of State's Exhibits #58 & #65 because he contends they are repetitive of State's Exhibits #59 & #64. The photographs are all essentially of the same view, but they are not identical. State's Exhibit #59 is a view of the right side of the head before any blood has been cleaned from the face and before the foam has been cleaned from the nose. According to Dr. Malak's testimony, State's Exhibit #59 shows damage to the right temple, blood trickling toward the right ear, and foam around the nose. State's Exhibit #64 is the same view of the right side of the head, but from slightly farther away and after the blood and foam have been cleaned from the face. According to Dr. Malak, the right side of the head was re-photographed after the blood and foam were cleaned up "to show the nature of the wound; to demonstrate exactly what the injuries are; and it shows also the damage to the nose and to the lips and to her right cheek." Dr. Malak also testified he thought it was important that this photograph showed one pearl earring and a total of four pierced holes in the ear. State's Exhibit #58 is a photograph of the right temple after Dr. Malak shaved the hair to show the wound and demonstrates that on the right side of the wound there is a circular wound and on the left side there is a tear extension. Dr. Malak testified that the nature of the wound "indicates the direction of—of the blow was coming from above down and to the right and the circular nature of the wound indicates a circular object has been used." State's Exhibit #65 is a close-up photograph of the wound to the right temple after the area has been cleaned and shaved which, according to Dr. Malak, shows the circular nature of the rounded object which had been thrust in the bone.

■ Thus, although the photographs are similar, each photograph was used by Dr. Malak during his testimony to show

the nature of the victim's wounds and were helpful to the jury. Therefore, the trial court did not err in allowing the photos to be admitted.

Under Ark. Sup. Ct. R. 4-3(h), the record has been reviewed concerning the rulings made against the appellant by the trial judge during the trial, and we find no error. For the reasons stated above, we affirm.

GLAZE, J., concurs.

HOLT, C.J., DUDLEY and NEWBERN, JJ., dissent.

TOM GLAZE, Justice, concurring. I join the majority opinion, but concur to its treatment of points one and three, and particularly address appellant's third argument. In this respect, appellant sought to ask the victim's father if the victim had previously stated she had been dating another man. Appellant argues such testimony was relevant because the victim had told appellant that she thought she was pregnant. Appellant states this would have allowed him to argue to the jury that when the victim left him, she went to meet this other married man, who, after being told that she thought she was pregnant, killed her. Nothing in the record supports such rank speculation. Certainly, the statement sought to be elicited offered no foundation for such an argument. In sum, the testimony proffered was wholly irrelevant, and the trial court properly excluded it.

ROBERT H. DUDLEY, Justice, dissenting. The difficulty in this case is caused by the formal charge. The State charged appellant with capital felony-murder by killing the victim while "in the course of or furtherance of" the crime of rape. Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1991). The State did not charge appellant with capital murder as the result of causing death with premeditation and deliberation. Ark. Code Ann. § 5-10-101(a)(4) (Supp. 1991). Because of the charge filed the State had to prove the underlying felony of rape. There was insufficient evidence to prove that underlying felony, and, accordingly, I dissent from the affirmance of the conviction.

The State's proof was exactly as set out in the majority opinion. Appellant killed the victim by beating her about the head, breasts, abdomen, elbows, vagina, and anus with a blunt circular object one and one-half inches in diameter, something

like a shovel handle. At some time during the series of murderous blows, appellant penetrated the victim's vagina and anus with the circular object. The wounds to the head and abdomen were also penetrating. The majority opinion holds this proof constituted sufficient evidence of rape by deviate sexual activity. I cannot agree.

Deviate sexual activity is "any act of *sexual gratification* involving the penetration . . . of the vagina or anus . . . by a . . . foreign instrument." Ark. Code Ann. § 5-14-101(1)(B) (1987) (emphasis added). It is necessary that the State prove the penetration of the vagina or anus was done for sexual gratification. *McGalliard* v. *State*, 306 Ark. 181, 813 S.W.2d 768 (1991). Such proof could have been by either direct or circumstantial evidence. Here, there was no direct proof. The proof is wholly circumstantial, but the proof is that blows to the head, abdomen, vagina, and anus were all penetrating blows. The penetrating blows to the vagina and anus might have been inflicted for the purpose of sexual gratification, but it is just as likely that they were inflicted for the purpose of murder since all of the blows were administered in the same manner and with the same object.

Circumstantial evidence may be sufficient to constitute substantial evidence. *Hooks* v. *State*, 303 Ark. 236, 795 S.W.2d 56 (1990). However, for circumstantial evidence to constitute sufficient evidence to sustain a conviction, it must be consistent with guilt of the defendant, and inconsistent with any other reasonable conclusion. *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991). The circumstantial evidence of rape in this case in not inconsistent with another reasonable conclusion. Here, it is just as likely that appellant administered the penetrating blows for the purpose of murder as it is that he administered them for the purpose of sexual gratification. Accordingly, in conformity with our long-established case law, I would hold that the State did not offer sufficient circumstantial evidence to convict appellant of killing another while "in the course of or furtherance of" the crime of rape.

I dissent.

HOLT, C.J., joins in this dissent.

DAVID NEWBERN, Justice, dissenting. As the majority

opinion states, one statutory definition of rape, as charged in this case, is "deviate sexual activity with another person . . . by forcible compulsion." "Deviate sexual activity" has been defined by the General Assembly as "any act of sexual gratification involving: [t]he penetration, however slight, of the vagina or anus of one person by any body member or foreign instrument manipulated by another person." Thus, to prove rape in the circumstances of this case, it was necessary for the state to show that Warren penetrated the victim as an act of "sexual gratification."

The Court's opinion concludes, in effect, it is unnecessary that there be proof of sexual gratification, relying on our decisions in *Williams* v. *State*, 298 Ark. 317, 766 S.W.2d 931 (1989), *McGalliard* v. *State*, 306 Ark. 181, 813 S.W.2d 768 (1991), and *Holbert* v. *State*, 308 Ark. 672, 826 S.W.2d 284 (1992). I disagree.

In the *Williams* case, Williams sought post-conviction relief on the ground that his lawyer was ineffective. *See* Ark. R. Crim. P. 37. He argued his lawyer should have challenged the sufficiency of the evidence used to convict Williams of rape. The evidence against Williams was that, during an attack on a woman he had once dated, he had placed his fingers in her vagina. We explained that the issue in an appeal from a denial of post-conviction relief is whether there is any evidence, no matter how slight, to support the conviction. We made this statement:

> The plain fact is that when persons, other than physicians or other persons for legitimate medical reasons, insert something in another person's vagina or anus, it is not necessary that the state provide *direct proof* that the act was done for sexual gratification. [Emphasis supplied.]

In my view we were not saying that there need be no proof whatever, but that circumstantial evidence would suffice. As the General Assembly has made sexual gratification an element of the definition of the offense, of course we cannot disregard it. The State must prove each and every element of the offense beyond a reasonable doubt. To do otherwise would be a violation of the Due Process Clause of the Fourteenth Amendment. *See Mullaney* v. *Wilbur*, 421 U.S. 684 (1975); *Patterson* v. *New York,* 432 U.S. 197 (1977); *Norton* v. *State,* 271 Ark. 451, 609 S.W.2d 1 (1988).

In the *McGalliard* case, we were dealing with a conviction of first degree sexual abuse, Ark. Code Ann. § 5-14-108(a)(3)(1987), which also requires a finding of sexual gratification. We rejected McGalliard's contention that the requirement of finding sexual gratification made the Statute vague. We pointed out the dictionary definition of "sexual" and that of "gratification" and said "[w]hen construed in accordance with their reasonable and commonly accepted meaning and with the specific acts described in section 5-14-101(8) [defining "sexual contact"], the words leave no doubt as to what behavior is prohibited under the statute." We then dealt with McGalliard's claim that the evidence was insufficient and found evidence of sexual gratification in the victim's testimony that McGalliard had touched her "between my legs . . . (indicating) right there in the middle . . . my private parts."

In the *Holbert* case, we again reviewed a conviction of sexual abuse in the first degree. The events giving rise to the charge occurred at a day care center. Witnesses, who were some of the child victims, testified they observed Holbert holding other girls and touching them between their legs in a manner that was not accidental. In another instance a witness testified that Holbert had touched the victims in their "privates."

In both the *McGalliard* and *Holbert* cases we cited the language quoted above from the *Williams* case for the proposition that there need be no direct evidence of sexual gratification, and that was correct. It is incorrect, however, to rely on it in this case in which there is no evidence whatever of sexual gratification. In all three of these earlier cases relied upon by the Court's opinion there was strong evidence of physical touchings, not involving an instrument, which could easily have been perceived by the fact finders as done for sexual gratification as we defined it in the *McGalliard* decision. I find no such evidence here.

As long as the General Assembly defines rape by deviate sexual activity as including sexual gratification on the part of the perpetrator, however ill advised that may be, I cannot ignore the requirement and vote to affirm a conviction when there is no such evidence, direct or circumstantial.

I respectfully dissent.

HOLT, C.J., joins this dissent.