MIKE MURPHY, Judge
On November 21, 2017, a Cleveland County jury found appellant Phillip Anthony Herren guilty of rape and sentenced him to forty years' incarceration in the Arkansas Department of Correction. On appeal, he argues that the circuit court abused its discretion when, under the rape-shield statute, it excluded some evidence regarding the victim's sexual behavior that occurred shortly before the charged conduct. He further argues that this denied him the due-process right to present a complete defense. We agree that the evidence was improperly excluded and therefore reverse and remand for a new trial.
A summary of the evidence, as it was presented to the jury, follows. On May 5, 2015, several teenage girls, including the *608 victim, BLR,[1] were spending the night at the house of their friend, KB. KB lived with her mother and her stepfather, Herren. Testimony from the trial revealed that BLR arrived at Herren's house around 8:00 p.m., smoked marijuana with Herren and his wife, and then participated in a "shot-drinking contest" with Herren. Over the course of the next hour, BLR then drank about ten or eleven shots of Crown Royal. BLR testified that she had no memory of anything that happened after about 10:00 p.m.
BM, one of the friends there, testified that she witnessed BLR drink about ten or eleven shots of whiskey, that BLR was drunk and falling over the bar stools, and that Herren was holding BLR up and grabbing her breasts. BM saw Herren pick BLR up and carry her into the living room from the kitchen. She testified that BLR was "drunk and knocked out." At this point, BM ran back to KB's bedroom to tell the other girls. One of the other girls, HM, then went to the bathroom and started videoing the encounter from under the door.
The girls then sneaked into the living room, hid behind a sofa, and watched Herren pull BLR's pants down and watched him inserting his fingers into BLR's vagina. At one point the girls came out from behind the couch and were standing by BLR, taking photos and videos while Herren was touching BLR. HM testified that, while she was videoing, BLR was slumped over, drunk, and passed out. The jury saw some of the photos and videos the State was able to recover from the girls' mobile phones.
Herren's and KB's testimony differed slightly from that of BM and HM. KB said that BLR's eyes were open most of the time and that BLR seemed "pretty conscious like she knew it was happening." Herren testified that BLR had a buzz but was "definitely conscious." He said that she knew what she was doing and told him to do it.
BLR testified that, the next morning, she woke up "feeling like death" and did not remember what had happened. The other girls told her what happened and showed her the photos and videos they took. BLR became upset and asked to be taken home. After telling her mother what happened, BLR went to Arkansas Children's Hospital for a rape test and evaluation.
Herren was convicted of rape and timely appeals, and the issues in this appeal revolve around evidence not yet summarized. This evidence was excluded from trial and not considered by the jury. Before trial, Herren had filed an extensive motion and incorporated brief for a rape-shield hearing with offers of proof on twenty-five areas of testimony he wanted to develop at trial. He received unfavorable rulings in almost every area; however, on appeal, he narrows his discussion to BLR's sexual conduct with Herren on the night of the alleged rape.
Specific to this appeal, the circuit court ruled that Herren would not be allowed to introduce evidence that before Herren digitally penetrated BLR, she was asking him for sex, masturbating in front of him, offering him oral sex, attempting to undo his shorts, and touching his penis through his shorts. Specifically, the circuit court ruled that "[t]his is not admissible under A.C.A. Sec. 16-42-101 unless relevancy has been determined. Whether this assertion is true or not, the Court finds it is not relevant and the prohibition of A.C.A. Sec. 16-42-101(b) applies." On appeal, Herren *609 argues that this evidence was improperly excluded.
The crime of rape encompasses sexual intercourse or deviate sexual activity with a person who is incapable of consent because she is physically helpless or mentally incapacitated. Ark. Code Ann. § 5-14-103(a)(2) (Supp. 2017). Deviate sexual activity is "any act of sexual gratification involving ... the penetration, however slight, of the labia majora ... of one person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(B). "Mentally incapacitated" means that a person is temporarily incapable of appreciating or controlling her conduct as a result of the influence of a controlled or intoxicating substance that renders her unaware a sexual act is occurring. Ark. Code Ann. § 5-14-101(5)(B). A person is "physically helpless" under the statute if she is unconscious, physically not able to communicate, or otherwise unaware that a sexual act is happening. Ark. Code Ann. § 5-14-101(7).
The rape-shield statute broadly excludes evidence of prior sexual conduct. Such evidence is "not admissible by the defendant ... to prove consent or any other defense, or for any other purpose." Ark. Code Ann. § 16-42-101(b) (1999). The circuit court is vested with a great deal of discretion in determining whether evidence is relevant and will not be reversed in deciding the admissibility of rape-shield evidence unless its ruling constitutes clear error or a manifest abuse of discretion. State v. Cossio , 2017 Ark. 297, at 5, 529 S.W.3d 620, 623.
On appeal, Herren argues that BLR's sexual conduct leading up to the act was improperly barred by the rape-shield statute because the conduct was not "prior sexual conduct" but was instead the res gestae, part and parcel, of the event as a whole. Res gestae comprises
circumstances so nearly related to the main fact under consideration as to illustrate its character and the state of mind, sentiment and disposition of the actor are parts of the res gestae, which embraces not only the actual facts of the transaction and the circumstances surrounding it, but also matters immediately antecedent to and having a direct causal connection with it, as well as acts immediately following it and so closely connected with it as to form in reality part of the occurrence.
Cossio , 2017 Ark. 297, at 5, 529 S.W.3d at 623.
Res gestae can include conduct of both the accused and the victim. See, e.g. , Brockwell v. State , 260 Ark. 807, 815, 545 S.W.2d 60, 66 (1976). Specifically, all the circumstances connected with a particular crime may be shown to put the jury in possession of the entire transaction. Gaines v. State , 340 Ark. 99, 110, 8 S.W.3d 547, 554 (2000).
The State argues that Herren's interpretation of "prior" is too narrow and that BLR's actions leading up to the act of digital penetration have no bearing on whether she was awake and consenting at the time of the act. The State likens this case to Cossio, supra.
Cossio was charged with the rape of a victim who was incapable of consent due to being physically helpless; the evidence showed that the adult victim was passed out due to consumption of alcohol and fatigue when she was raped. Id. at 3, 529 S.W.3d at 622. Cossio sought to introduce evidence of sexual conduct between the victim and Cossio's girlfriend from the night before, arguing that the events leading up to the rape were part of the res gestae of the case. Id. The circuit court ruled that Cossio could not use this evidence to show that the victim consented to *610 the contact but admitted the evidence anyway, as res gestae, so that the jury would understand the nature of the relationship between the parties. Id.
On appeal, the Arkansas Supreme Court reversed and remanded, holding that the circuit court abused its discretion in admitting evidence of the victim's prior sexual conduct under the res gestae exception because Cossio failed to demonstrate how evidence of the victim's sexual conduct on the day before the offense was probative of whether Cossio raped her the next evening while she was physically helpless and incapable of consent. Id. at 7-8, 529 S.W.3d at 624-25.
Herren argues, and we agree, that Cossio is distinguishable. The evidence excluded in Cossio involved sexual activity the victim had with a third party the night before. Here, the excluded evidence is alleged sexual activity between the same parties on the same night as the charged conduct. Herren asserts the activity took place approximately ten minutes before the penetration.
Instead, we agree with Herren that the above evidence is res gestae and that excluding it was clear error. Kemp v. State is instructive. 270 Ark. 835, 606 S.W.2d 573 (1980). In Kemp , the victim was the babysitter for the defendant and his wife. Id. The defendant was charged with rape. Id. Kemp asserted consent as his defense and sought to introduce evidence that on nights he had taken the victim home, they had "necked," she had put her hand on his penis, and he had rubbed her breasts. Id. at 838-39, 606 S.W.2d 5. He also said she had told him of her affairs with two married men. Id. at 839, 606 S.W.2d at 575. The circuit court ruled that he could not introduce this evidence under the rape-shield statute. Id. at 838, 606 S.W.2d at 575. Kemp then brought an interlocutory appeal in which he asserted, in part, that the circuit court's rape-shield ruling was error. Id. at 837, 606 S.W.2d at 574. Our supreme court affirmed the circuit court but made an instructive note "that the rape shield statute only excludes evidence of prior sexual conduct of the victim, and that appellant may testify at trial as to the actions of the prosecuting witness on the night of the alleged rape." Id. at 839, 606 S.W.2d at 575.
The "rape-shield statute is intended to protect victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending , paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt." Butler v. State , 349 Ark. 252, 266, 82 S.W.3d 152, 160 (2002) (emphasis added). Simply put, evidence that BLR was asking Herren for sex, masturbating in front of him, offering him oral sex, attempting to undo his shorts, and touching his penis through his shorts, all within approximately ten minutes of penetration, is conduct related to the charges pending, and therefore relevant and probative to the issue of consent.
Nor can we say the error is harmless. Even when a circuit court errs in admitting evidence, we have held that when the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm the conviction. Buford v. State , 368 Ark. 87, 91, 243 S.W.3d 300, 303 (2006). To determine if the error is slight, we look to see if the defendant was prejudiced. Id. Here, at trial, the story painted for the jury was essentially one in which Herren encouraged a sixteen-year-old girl to drink eleven shots of whiskey and then raped her. Introducing the above evidence changes that story rather significantly. Herren argued that BLR was cognizant and consenting at the time of the charged conduct and had he been allowed to introduce evidence of *611 BLR's conduct with him leading up to penetration, it could have bolstered his testimony and his account of the events. The circuit court's ruling precluding Herren from introducing that evidence and questioning witnesses about those events was prejudicial to Herren and therefore not harmless.
Because we reverse and remand for retrial for this reason, we need not address Herren's remaining argument that the circuit court's application of the rape-shield exclusion violated his rights under the Confrontation Clause and denied him due process.
Reversed and remanded.
Abramson and Gladwin, JJ., agree.

At the time, BLR was sixteen, which is over the age of consent in Arkansas.